UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN
CIVIL ACTION NO. 1:07CV-00084-EHJ

DENNIS M. TUCK  PLAINTIFF

VS.

MICHAEL J. ASTRUE,
Commissioner of Social Security  DEFENDANT

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND RECOMMENDATION

### BACKGROUND

Before the Court is the complaint (DN 1) of Dennis M. Tuck ("Plaintiff") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). Both the plaintiff (DN 11) and the defendant (DN 13) have filed a Fact and Law Summary. Additionally, with leave of Court (DN 16), plaintiff has filed a reply memorandum (DN 17).

The District Judge has referred the case to the undersigned United States Magistrate Judge (DN 10) to review the Fact and Law Summaries and submit Findings of Fact, Conclusions of Law and Recommendations.  28 U.S.C. Section 636(b)(1)(B).  By Order entered July 23, 2007 (DN 10), the parties were notified that oral arguments would not be held unless a written request therefor was filed and granted.  No such request was filed.

### FINDINGS OF FACT

On April 14, 2004, plaintiff filed applications for Disability Insurance Benefits and Supplemental Security Income payments (Tr. 72-74, 307-312). Plaintiff alleged that he became

disabled on January 30, 2004 as a result of neck and back injury and spinal stenosis (Tr. 32, 72, 109, 307). Administrative Law Judge Randolph E. Schrim ("ALJ") conducted a hearing on August 8, 2005 in Bowling Green, Kentucky (Tr. 328). The plaintiff was present and represented by attorney Debra Broz (Tr. 328) . Also present and testifying was Stephanie Barnes as a vocational expert (Tr. 328).

In a decision dated October 26, 2005, the ALJ utilized the five-step sequential evaluation process for evaluating adult disability claims (Tr. 31-37). At the first step, the ALJ determined that plaintiff had not engaged in substantial gainful activity since the alleged onset date (Tr. 36, Finding 2). At the second step, the ALJ found from the medical evidence that plaintiff's cervical degenerative disc disease is a "severe" impairment within the meaning of the regulations (Tr. 34). The ALJ also found from the medical evidence that plaintiff's anxiety is a "non-severe" impairment within the meaning of the regulations (Tr. 33). Notably, the ALJ discussed the medical evidence regarding plaintiff's depression, right knee and back but did not determine whether each of these conditions is a "severe" or "non-severe" impairment (Tr. 33-34). At the third step, the ALJ found that plaintiff's cervical degenerative disc disease is not "severe" enough to meet or medically equal one of the impairments listed in Appendix 1 (Tr. 34).

At the fourth step, the ALJ accepted the weight restriction expressed by Dr. Shields, an examining physician (Tr. 35). Additionally, the ALJ accepted all of the limitations expressed by a non-examining State agency medical consultant on June 24, 2004 (Tr. 35). The ALJ then determined that plaintiff retains the residual functional capacity to perform less than a full range of

work at the medium exertional level (Tr. 35).[1] Relying on testimony from the vocational expert, the ALJ found that plaintiff is able to return to his past relevant type of work as an auto salesman (Tr. 36, 37). Based on the above findings, the ALJ concluded that plaintiff has not been under a "disability," as defined in the Social Security Act, from the alleged onset date through the date of the decision (Tr. 36, 37).

Plaintiff timely filed a request for review by the Appeals Council (Tr. 23, 25-26). The Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-8).

CONCLUSIONS OF LAW

The Social Security Act ("Act") authorizes payment of Disability Insurance Benefits and Supplemental Security Income to persons with disabilities. 42 U.S.C. §§ 401 et seq. (Title II Disability Insurance Benefits), 1381 et seq. (Title XVI Supplemental Security Income). The term "disability" is defined as an

> "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months."

42 U.S.C. §§ 423(d)(1)(A) (Title II), 1382c(a)(3)(A) (Title XVI); 20 C.F.R. §§ 404.1505(a), 416.905(a); Barnhart v. Walton, 535 U.S. 212, 214 (2002); Abbott v. Sullivan, 905 F.2d 918, 923 (6th Cir. 1990).

The Commissioner has promulgated regulations setting forth a five-step sequential

---

[1] Specifically, the ALJ found that plaintiff is capable of lifting and carrying 50 pounds occasionally and 25 pounds frequently; sit, stand and/or walk up to 6 hours each in an 8 hour workday; never climb ladders; ropes or scaffolds; limited overhead reaching; and should avoid concentrated exposure to vibration and even moderate exposure to hazards (Tr. 35, 37).

evaluation process for evaluating a disability claim.  See "Evaluation of disability in general," 20 C.F.R. Sections 404.1520, 416.920.  In summary, the evaluation proceeds as follows:

> 1) Is the claimant engaged in substantial gainful activity?
>
> 2) Does the claimant have an impairment or combination of impairments that significantly limits his or her ability to do basic work activities?
>
> 3) Does the claimant have an impairment that satisfies the duration requirement and meets or medically equals the criteria of a listed impairment within Appendix 1?
>
> 4) Does the claimant have the residual functional capacity to return to his or her past relevant work?
>
> 5) Does the claimant's residual functional capacity, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy?

Here, the ALJ denied plaintiff's claim at the fourth step.

As previously mentioned, the Appeals Council denied plaintiff's request for review of the ALJ's decision (Tr. 6-8).  At that point, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. §§ 404.955(b), 404.981, 422.210(a); See 42 U.S.C. § 405(h) (finality of the Commissioner's decision).

Review by the Court is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by "substantial evidence," 42 U.S.C. Section 405(g); Cotton v. Sullivan, 2 F.3d 692, 695 (6th Cir. 1993); Wyatt v. Secretary of Health and Human Serv's., 974 F.2d 680, 683 (6th Cir. 1992), and whether the correct legal standards were applied.  Landsaw v. Secretary of Health and Human Serv's., 803 F.2d 211, 213 (6th Cir. 1986).  "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." Cotton, 2 F.3d

at 695 (quoting Casey v. Secretary of Health and Human Serv's., 987 F.2d 1230, 1233 (6th Cir. 1993)). In reviewing a case for substantial evidence, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." Cohen v. Secretary of Health and Human Serv's., 964 F.2d 524, 528 (6th Cir. 1992) (quoting Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984)).

At the second step, plaintiff challenges the ALJ's failure to find his mental impairments (anxiety and depression) and his orthopedic impairments (back and right knee) are "severe" impairments (DN 11). By way of background, at the second step a claimant must demonstrate he or she has at least one "severe" "medically determinable"[2] physical or mental impairment that meets the "duration" requirement[3] to continue with the remaining steps in the disability determination. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Higgs v. Bowen, 880 F.2d 860, 863 (6th Cir. 1988) (per curiam). A physical or mental impairment is "severe" if it significantly limits the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c), 416.920(a)(4)(ii) and (c); Social Security Ruling 96-3p; Social Security Ruling 96-4p; Higgs, 880 F.2d at 863. Notably, if the impairment does not satisfy the "severe" requirement then it is considered "non-severe" or "not severe". 20 C.F.R. §§ 404.1521(a), 416.921(a); Higgs, 880 F.2d at 862; Farris v. Secretary of Health and Human Services, 773 F.2d 85,

---

[2]To satisfy the "medically determinable" requirement the claimant must present objective medical evidence (i.e., signs, symptoms, and laboratory findings) that demonstrates the existence of a physical or mental impairment. 20 C.F.R. § 404.1508, 416.908; Social Security Ruling 96-3p; Social Security Ruling 96-4p.

[3]To satisfy the "duration" requirement the impairment or combination of impairments "must have lasted or must be expected to last for a continuous period of at least twelve (12) months." 20 C.F.R. §§ 404.1509, 416.909.

89-90 (6th Cir. 1985).

It is not uncommon for a claimant to argue the Administrative Law Judge erred in failing to find one of his or her other physical or mental conditions also constitutes a "severe" impairment. In <u>Maziarz v. Secretary of Health and Human Services</u>, the Sixth Circuit found it unnecessary to decide this question because the Administrative Law Judge determined at least one of the claimant's conditions is "severe" and continued with the remaining steps in his disability determination. 837 F.2d 240, 244 (6th Cir. 1987). The Sixth Circuit reasoned since the Administrative Law Judge could consider the claimant's non-severe condition in assessing whether the claimant retains sufficient residual functional capacity to allow him or her to perform substantial gainful activity, the failure to find that "condition constituted a 'severe' impairment could not constitute reversible error." <u>Id.</u> For the reasons set forth below, the circumstances here are distinguishable from those in <u>Maziarz</u> and, as a result, it is necessary to address plaintiff's argument that the ALJ erred in failing to find his anxiety and depression also constitute "severe" impairments.

As previously mentioned, an impairment is "severe" if it "significantly limits" the claimant's ability to do "basic work activities."[4] 20 C.F.R. §§ 404.1520(c), 416.920(c); Social Security Ruling 96-3p; Social Security Ruling 96-4p. The determination whether a mental impairment "significantly limits" a claimant's ability to do one or more basic work activities is made by assessing the degree of limitation it imposes in four broad functional areas. 20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3). The four broad functional areas are as follows:

1. Activities of daily living;

---

[4] The regulations define "basic work activities" as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b).

      2. Social functioning;

      3. Concentration, persistence, or pace; and

      4. Episodes of decompensation.

20 C.F.R. §§ 404.1520a(c)(3); 416.920a(c)(3).

      The degree of limitation in the first three functional areas is rated according to the following five-point scale: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). The degree of limitation in the fourth functional area is rated according to the following four-point scale: none, one or two, three, four or more. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). Notably, if the degree of limitation in the first three functional areas is found to be "none" or "mild" and the degree of limitation in the fourth area is found to be "none," the mental impairment is considered non-severe, unless the evidence otherwise indicates there is more than a minimal limitation in the claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). With this framework in mind the undersigned will now summarize the medical evidence in the record regarding plaintiff's anxiety and depression.

      Steve Webne, Ph.D., performed a consultative psychological evaluation on May 22, 2000 (Tr. 203-208). Dr. Webne issued a multiaxial diagnostic assessment regarding plaintiff (Tr. 207). He expressed a diagnostic impression of anxiety disorder, not otherwise specified, at Axis I (Tr. 207). Dr. Webne expressed a Global Assessment of Functioning ("GAF") rating of 65 at Axis V (Tr. 207).[5] Notably, a GAF rating of 61 through 70 indicates "[s]**ome mild symptoms** (e.g.,

---

[5]"Axis V is for reporting the clinician's judgment of the individual's overall level of functioning." *Diagnostic and Statistical Manual of Mental Disorders* at Page 32 (4th ed. TR 2000) ("DSM-IV-TR"). "This information is useful in planning treatment and measuring its impact, and in predicting outcome." Id. "The reporting of overall functioning on Axis V can be done using the Global Assessment of Functioning (GAF) Scale." Id. "The GAF Scale may be

7

depressed mood and mild insomnia) **OR some difficulty in social, occupational, or school functioning** (e.g., occasional truancy, or theft within the household), **but generally functioning pretty well, has some meaningful interpersonal relationships.**" *Diagnostic and Statistical Manual of Mental Disorders* at Page 32 (4th ed. TR 2000) ("DSM IV TR"). In pertinent part Dr. Webne's report reads as follows:

> "Mr. Tuck would have little or no difficulty retaining simple instructions in a routine work setting. His ability to retain more complex instructional sets as well as his ability to remain focused on work related tasks in excess of two hours would be generally unimpaired. This man's ability to maintain and develop work based relationships would largely be unimpaired. The claimant's ability to function autonomously would also largely be unimpaired. Mr. Tuck's ability to deal with work stress may be challenges [sic] occasionally by back pain. Especially during those times when he is experiencing more intense back pain, his ability to manage physical activities could be challenged."

(Tr. 208).

On July 24, 2000, Jay Athy, Ph.D., a non-examining State agency psychologist, reviewed the record and prepared a Psychiatric Review Technique form (Tr. 216-224). Notably, Dr. Athy indicated that he gave great weight to the opinions expressed by Dr. Webne (Tr. 217). In pertinent part, Dr. Athy concluded from the evidence in the administrative record that plaintiff had

---

particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." Id. "The GAF Scale is divided into 10 ranges of functioning." Id. "Making a GAF rating involves picking a single value that best reflects the individual's overall level of functioning." Id. "The description of each 10-point range in the GAF Scale has two components: the first part covers symptom severity, and the second part covers functioning." Id. "The GAF rating is within a particular decile if **either** the symptom severity **or** the level of functioning falls within the range." Id. Notably, when a patient's symptoms severity and level of functioning are discordant "the final GAF rating always reflects the worst of the two." Id. at 32-33. Thus, the GAF rating at Axis V may reflect plaintiff's symptoms severity, his level of functioning, or both. Id.

a "non-severe" anxiety related disorder (Tr. 216, 220). Additionally, Dr. Athy opined the degree of limitation in each of the four broad functional areas are as follows: a slight limitation in activities of daily living; a slight limitation in social functioning; seldom deficiencies in concentration, persistence or pace; and never as to episodes of decompensation (Tr. 223).

In a report dated April 24, 2000, Dr. Marrs, a general practitioner, indicated he had treated plaintiff for depression with obsessive compulsive behavior (Tr. 238). On August 14, 2004, Dr. Marrs indicated he last treated plaintiff for depression on January 19, 2004 (Tr. 237). Notably, these reports became a part of the administrative record after Dr. Athy reviewed the record and filled out the Psychiatric Review Technique form.

Lee Perritt, Ph.D., a non-examining State agency psychologist, reviewed the record and prepared a Psychiatric Review Technique form on August 25, 2004 (Tr. 247-260). In pertinent part, Dr. Perritt concluded plaintiff had a "non-severe" anxiety related disorder (Tr. 247, 252). Additionally, Dr. Perritt opined the degree of limitation in each of the four broad functional areas are as follows: a mild limitation in activities of daily living; a mild limitation in social functioning; a mild limitation in concentration, persistence, or pace; and none as to episodes of decompensation (Tr. 257). As previously mentioned, the regulations indicate when the degree of limitation in the first three functional areas is found to be "mild" and the degree of limitation in the fourth functional hour area is found to be "none" the mental impairment is considered non-severe. 20 C.F.R. §§ 404.1520a(d), 416.920a(d). Notably, Dr. Perritt reviewed the administrative record and rendered his opinions before the following medical evidence became part of the administrative record.

Dr. Wellman, a psychiatrist, treated plaintiff during the time frame June 28 through November 12, 2004 (Tr. 269-276). On December 10, 2004 Dr. Wellman issued a handwritten

statement setting forth a multiaxial assessment regarding plaintiff (Tr. 266-267).  At Axis I he expressed a diagnostic impression of major depression, dysthymia, pain disorder with physical and psychological factors, and a personality disorder (Tr. 266-267).  At Axis V he expressed a GAF rating of 45 (Tr. 267).  A GAF rating of 41 through 50 indicates "**[s]erious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **OR any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)."  Id. at 34.

During the time frame December 16, 2004 through April 15, 2005 plaintiff received treatment for his mental impairments at LifeSkills, Inc. ("LifeSkills") (Tr. 286-293, 303-306).  His treating therapist at LifeSkills was Marsha York, M.A., and his treating psychiatrist was Dr. Reddy (Tr. 286-293, 303-306).  On December 16, 2004, Marsha York conducted a psychosocial evaluation and prepared a treatment plan which set forth a multiaxial assessment regarding plaintiff (Tr. 289-291, 292).  At Axis I she expressed a diagnostic impression of major depressive disorder, reoccurrent severe, with mood congruent psychotic features (Tr. 292).  At Axis V she expressed a GAF rating of 47 (Tr. 292).

On January 21, 2005 Dr. Reddy conducted a psychiatric evaluation of plaintiff (Tr. 286-287).  At Axis I he expressed the same diagnostic impression as Ms. York (compare Tr. 287 with Tr. 292).  However, Dr. Reddy did not express an opinion at Axis V (Tr. 287).  His psychiatric evaluation set forth a chemotherapy plan that included Lexapro for plaintiff's depression (Tr. 287).  Notably, the LifeSkills records indicate on January 21, 2005 plaintiff missed his therapist appointment and it was rescheduled (Tr. 288).

Dr. Reddy's treatment note of February 18, 2005, indicates plaintiff reported adverse side effects and recalled taking Lexapro in the past and not having good success (Tr. 306).  The

treatment note indicates Dr. Reddy prescribed Effexor XR in place of Lexapro (Tr. 306). On the same date Ms. York assigned a GAF rating of 55 (Tr. 304). A GAF rating of 51 through 60 indicates "[**m**]**oderate symptoms** (e.g., flat affect and circumstantial speech, occasional panic attacks) **OR moderate difficulty in social, occupational, or school functioning** (e.g., few friends, conflicts with peers or co-workers)." DSM-IV-TR at Page 32.

A LifeSkills staff note dated March 16, 2005, indicates plaintiff failed to appear for an appointment with Dr. Reddy and no reason was given (Tr. 304). However, on that same day a staff note apparently signed by Dr. Reddy indicates plaintiff's wife called to cancel the appointment because he "had the flu which turned into asthmatic bronchitis" (Tr. 305). A similar staff note was signed by Ms. York (Tr. 305). Notably, in a treatment note dated April 15, 2005, Ms. York indicated plaintiff reported having been sick with bronchitis and then pneumonia (Tr. 303). On that date Ms. York again assigned a GAF rating of 55 (Tr. 303). Dr. Reddy's treatment note of April 15, 2005 indicates plaintiff believed the Effexor XR was helping but was having to take less than the prescribed dosage "due to lack of supply" (Tr. 303). Dr. Reddy's treatment note mentioned discussion with plaintiff about his medications (Tr. 303). Notably, Dr. Reddy indicates he substituted Effexor XR for Lexapro because plaintiff "didn't take the Lexapro" (Tr. 303).

In the context of addressing the question of whether plaintiff has a "severe" mental impairment, the ALJ made no mention of the report from Dr. Webne, the consultative psychological examiner (Tr. 33). The ALJ did summarize the medical evidence from Dr. Wellman and LifeSkills (Tr. 33). However, the ALJ did not mention that Dr. Wellman's diagnosis, on December 10, 2004, included a GAF rating of 45 or that Ms. York's diagnosis, on December 16, 2004, included a GAF rating of 47 (Tr. 33). The ALJ did, however, acknowledge the GAF rating of 55 assigned in April

2005 (Tr. 33). Further, the ALJ mistakenly found that plaintiff missed "**several** scheduled appointments" at LifeSkills "without an excuse" (Tr. 33) (emphasis added). The LifeSkills records indicate plaintiff only missed two scheduled appointments and only one was without an excuse (Tr. 288, 304-305).[6] Finally, the ALJ mistakenly found that plaintiff did not take prescribed psychotropic medication (Tr. 33). Clearly, this finding is based upon an inaccurate characterization of what is actually set forth in the staff notes regarding plaintiff's problems with Lexapro, Dr. Reddy's decision to switch to Effexor XR, and plaintiff running short on his supply of Effexor XR (compare Tr. 33 with Tr. 303, 306).

The ALJ did accurately summarize the assessment prepared by Dr. Perritt, the non-examining State agency psychologist (Tr. 33). The ALJ accepted Dr. Perritt's assessment because he found it to be consistent with the entire record (Tr. 33). Then, the ALJ relied on Dr. Perritt's opinions to find plaintiff's "anxiety is not a 'severe' impairment" (Tr. 33).

The records from Dr. Wellman and LifeSkills do not express opinions regarding plaintiff's anxiety. Thus, the uncontradicted medical opinions of Drs. Webne and Perritt provide substantial evidence to support the ALJ's finding that plaintiff's anxiety is a "non-severe" impairment. In sum, there is no merit to plaintiff's challenge to the ALJ's findings regarding his anxiety.

Unquestionably, the ALJ was aware of the medical evidence from Dr. Wellman and

---

[6]The first time plaintiff missed an appointment was on January 21, 2005 (Tr. 288). On that date he missed his therapist appointment with Ms. York but he did see Dr. Reddy for a psychiatric evaluation (Tr. 288). The second time plaintiff missed a scheduled appointment was March 16, 2005 (Tr. 304). While a staff note signed by Nita Hagan indicates "no reason given" (Tr. 304), there are also staff notes signed by Dr. Reddy and Ms. York that indicate plaintiff's wife called to cancel the appointment because plaintiff was sick with asthmatic bronchitis (Tr. 304-305).

LifeSkills regarding plaintiff's depression (Tr. 33). Further, the medical opinions from Dr. Wellman and LifeSkills regarding plaintiff's depression are not controverted by other medical evidence in the record.[7] Yet, the ALJ failed to make a finding on the issue of whether plaintiff's depression is a "severe" impairment (Tr. 33). 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). For this reason, the undersigned concludes the ALJ's omission regarding Plaintiff's depression does not comport with applicable law.

This of course begs the question, is the ALJ's error at the second step harmless? Since the medical opinions from Dr. Wellman and Lifeskills are uncontradicted by other medical evidence in the record, there is substantial evidence in the record to support a finding that plaintiff's depression is a "severe" impairment. The undersigned will not address the question of whether the evidence from Dr. Wellman and LifeSkills supports a disability finding at the third step. Instead, the undersigned will proceed to the fourth step and attempt to determine whether plaintiff was prejudiced by the ALJ's error at the second step.

At the fourth step, the Administrative Law Judge makes findings regarding the claimant's residual functional capacity[8], the physical and mental demands of the claimant's past

---

[7]It is relatively easy to discern from the record that this medical evidence became a part of the administrative record after Drs. Webne, Athy and Perritt rendered their opinions. Moreover, a cursory review of the forms filled out by Drs. Athy and Perritt reveals no opinions were expressed as to the category "12.04 Affective Disorders" which includes depression (Tr. 216, 219, 247, 250). Dr. Webne did not express an opinion regarding depression either (Tr. 207, 208).

[8]The residual functional capacity finding is the Administrative Law Judge's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. §§ 404.1545(a), 404.1546, 416.945(a), 416.946. The residual functional capacity finding is based on a consideration of the medical source statements and all other evidence in the case record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. §§ 404.1529, 404.1545(a), 404.1546, 416.929, 416.945(a),

relevant work, and the claimant's ability to return to his or her past relevant work . 20 C.F.R. §§ 404.1520(e), 416.920(e). In regard to this last finding, the relevant inquiry is whether the claimant can return to his or her past type of work rather than just a past job. <u>Studaway v. Secretary of Health and Human Services</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).

Here, the ALJ did not consider limitations imposed by plaintiff's depression when he made the residual functional capacity findings (Tr. 35). Nor did the ALJ include in the hypothetical questions to the vocational expert limitations imposed by plaintiff's depression (Tr. 344-347). As a result, there is no vocational opinion in the administrative record addressing the question of what impact this condition would have on plaintiff's ability to return to his past type of work in auto sales.

Clearly, there is a need to more fully develop the administrative record regarding the limitations imposed by plaintiff's depression and the vocational effect of those limitations. Absent such information the undersigned can only speculate about whether plaintiff was prejudiced by the ALJ's error at the second step. For this reason, the undersigned will recommend the Court reverse the final decision of the Commissioner and remand for further proceedings. During those further proceedings the Commissioner should more fully develop the administrative record regarding the limitations imposed by plaintiff's depression and the vocational effect of those limitations.

The circumstances here are distinguishable from those in <u>Maziarz v. Secretary of Health and Human Services</u>, 837 F.2d 240, 244 (6th Cir. 1987). In contrast to <u>Maziarz</u>, here the ALJ did not comply with applicable law because he failed to determine whether plaintiff's depression is a "severe" impairment. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Additionally, here the

---

416.946.

uncontroverted medical evidence in the record indicates the depression is a "severe" impairment. Finally, here the record is not sufficiently developed to determine whether at the fourth and fifth steps plaintiff has been prejudiced by the ALJ's error at the second step.  Id.

The undersigned acknowledges that plaintiff has raised other challenges to the ALJ's findings.  The undersigned concludes it is not necessary to address those challenges in light of the above findings.

## RECOMMENDATION

For the foregoing reasons, the undersigned concludes that the Commissioner's findings regarding plaintiff's depression at the second step are not supported by substantial evidence in the record and do not comport with applicable law.  The undersigned recommends that the final judgment of the Commissioner be reversed and this case be remanded for further proceedings with an eye towards more fully developing the record regarding plaintiff's mental impairments.

## NOTICE

Therefore, under the provisions of 28 U.S.C. Sections 636(b)(1)(B) and (C) and Fed.R.Civ.P. 72(b), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within ten (10) days

after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. If a party has objections, such objections must be filed within ten (10) days or further appeal is waived. Thomas v. Arn, 728 F.2d 813 (6th Cir.), aff'd, 474 U.S. 140 (1984).

Copies:     Counsel